UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Deborah Johns                           )
2235 Banbury Circle                     )
Roseville, California 95661             )
                                        )
                 Plaintiff,             )
                                        )
        v.                              )    Civil Case No. _____
                                        )
Newsmax Media, Inc.                     )
560 Boulevard, Suite 120                )
West Palm Beach, Florida 33409          )
                                        )
                 Defendant.             )
                                        )

**COMPLAINT**

Plaintiff DEBORAH JOHNS hereby files this complaint against Defendant NEWSMAX MEDIA INC. and alleges as follows:

**STATEMENT OF JURISDICTION AND VENUE**

1. The District Court has jurisdiction pursuant to 28 U.S.C. §1332 over this action which is arises out of a diversity of citizenship, has an amount in controversy in excess of $75,000, and bears heavily on questions of federal law, specifically the CAN SPAM Act 15 U.S.C. 7701.

2. Venue is proper pursuant to 28 U.S.C. §1931, as Defendant and Plaintiff conduct business in Washington, DC.

**PARTIES**

3. Plaintiff, Deborah K. Johns, is an individual who, at all times relevant to this matter was, and remains, a resident of Roseville, California.

4. Plaintiff conducts the business that is the subject of this action through a Washington, DC, office.

5. Defendant, Newsmax Media, Inc. is a news media organization incorporated and headquartered in West Palm Beach, Florida.

6. At all times relevant to this matter, Defendant was, and remains, a resident of Florida.

7. Defendant conducts business in Washington, DC, where it employs a Washington Bureau Chief.

## STATEMENT OF FACTS

8. On June 15, 2011, Plaintiff and Defendant entered into a written marketing agreement (hereinafter "the contact") for marketing services.

9. Under the contract, Defendant acted as the "exclusive agent for marking and rental of advertising space in emails distributed by [Plaintiff] to the e-mail addresses….[hereinafter referred to as the 'List']" (Exhibit 1, preamble)

10. The agreed upon strategy for the use of the list was for Plaintiff to provide up to 3 emails per week of "content" and Defendant to provide 2 emails per week of advertising, all of which was to be transmitted solely by Defendant.

11. At the time of contract the list consisted of approximately 100,000 e-mail addresses. (Exhibit 1). According to Defendant's published marketing materials regarding the list, is now 95,000 email addresses. (Exhibit 2)

12. Pursuant to Paragraph 1 of the contract, the list is the sole property of Plaintiff. (Exhibit 1, ¶1)

13. Pursuant to Paragraph 1 of the contract, Defendant was obligated to "maintain and update the List (additions and deletions) on a monthly basis and honor all opt-out (unsubscribe) requests…" (Exhibit 1, ¶1)

14. Either party was permitted to terminate the contract with 30 days notice. For 30 days following written notice, Defendant was obliged to continue to act as a Plaintiff's exclusive agent. (Exhibit 1, ¶9)

15. On October 26, 2011, Defendant notified Plaintiff via e-mail that it was terminating the contract. (Exhibit 3)

16. Pursuant to the termination provision, Defendant was obliged to provide services from June 15, 2011 until November 25, 2011, 30 days after written notice of termination was received by the Plaintiff.

17. Throughout the duration of the contract, advertising revenues generated by Defendant were negligible and Defendant only succeeded in selling advertising to transmit on 7 occasions.

18. Following Defendant's termination of the contract on October 26, 2011, Defendant ceased all efforts to continue marketing and sales of advertising for Plaintiff. (Exhibit 4)

19. Immediately upon termination of the contract, Plaintiff requested that Defendant provide the list as updated pursuant to the contract, reflecting "updates, changes, and opt-outs" to the list, inclusive of demographic data appended to the list by Defendant in the course of conducting a survey of the list. (Exhibit 5)

20. Defendant has refused to produce the revised list despite repeated requests by Plaintiff to do so.

21. Defendant is flatly denying its contractual duty to turn over the list as updated.

## FIRST COUNT: BREACH OF CONTRACT

22. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

23. As set out in Paragraph 17, Defendant made negligible efforts to market and sell advertising in e-mails to Plaintiff's list. In the period leading up to the termination of the contract, Defendant sold advertising on just 7 occasions.

24. Both parties to a contract are under a duty to perform in good faith.

25. Defendant's failure to make adequate efforts to sell advertising to the list demonstrated a lack of good faith, as they did not exercise reasonable efforts to generate sales.

26. Defendant's failure to generate any reasonable level of sales resulted in significant harm to Plaintiff, who was prohibited by the contract from otherwise commercializing the list.

27. Accordingly, because Defendant did not make its best or reasonable efforts to market and rent advertising space in emails to be distributed to the list, it breached the contract and Plaintiff is entitled to resulting damages.

## SECOND COUNT: BREACH OF CONTRACT

28. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

29. As set out in Paragraph 13, Defendant had an obligation under Paragraph 1 of the contract to "maintain and update the list on a monthly basis and honor all opt-out requests."

30. Defendant has in no way performed any of its contractual obligations in this regard; neither updating the list with new, information, or providing a monthly record of such, or honoring the opt-out requests by conveying that information to Plaintiff as the list owner.

31. Defendant has not provided any updates to the list with any of information obtained from a survey of list respondents.

32. Defendant has not removed emails that cease to function ("bounces") from the list

33. Defendant has not produced and continues to refuse to produce an updated list or otherwise demonstrate that it maintained the list and honored opt-outs.

34. As Defendant has not produced an updated list that reflects additions and removals to the list, Plaintiff is justified in asserting that Defendant failed to update the list and, accordingly breached its obligations under the contract. Plaintiff is entitled to damages resulting from Defendant's failure to satisfy this obligation.

### THIRD COUNT: CONVERSION

35. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

36. As set out in Paragraph 12, Plaintiff remains at all times the owner of the list. As such, the list remains the exclusive intellectual property of Plaintiff.

37. Defendant's unauthorized withholding of the updated list constitutes conversion of Plaintiff's unique property. The updated list is solely in the possession of Defendant, and Defendant continues to deny Plaintiff's right to make use of the list.

38. Defendant's continued possession of the list has resulted in economic harm to the Plaintiff who is unable to make commercial use of the list without expressly violating the provisions of the federal CAN SPAM Act and the significant potential penalties thereunder.

39. Under the CAN-SPAM Act, 15 U.S.C. §7701, Plaintiff is prohibited from sending electronic communication (email) to those who opt out from receiving such communication.15 U.S.C. 7704(a)(4).

40. A violation of the CAN SPAM Act is treated as if it were "an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the Federal Trade Commission Act (15 U.S.C. 57a(a)(1)(B))," and subject to such penalties as may be necessary to redress the harm caused. 15 U.S.C. §7706(a).

41. A party who violates the Act can also be subject to State enforcement actions. 15 U.S.C. §7706(f). Under §7706(f) a party who violates the act can be subject to up to $250 in fines per violation, up to $2 million. 15 U.S.C. §7706(f )(3). In circumstances where the

party knowingly violated the act, the court may award treble damages. 15 U.S.C. §7706(f)(3)(c). In addition, the state may be entitled to attorney fees. 15 U.S.C. §7706(f)(4).

42. Were Plaintiff to send out e-mails to the un-updated list, Plaintiff would be knowingly be acting in violation of the CAN SPAM Act and would be exposed to severe penalties, including up to $6 million in civil penalties.  As a result of the severe penalties that would potentially result from contacting the list without first removing all opt-outs, Defendant is prohibiting Plaintiff from utilizing her intellectual property.

## FOURTH COUNT: MISAPPROPRIATION

43. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

44. As set out in Paragraph 12, Plaintiff remains at all times the owner of the list. As such, the list remains the exclusive intellectual property of Plaintiff.

45. Defendant intentionally and unlawfully misappropriated Plaintiff's intellectual properties when Defendant refused to return the list, which is the exclusive property of Plaintiff.

46. Because the list is the sole possession of the plaintiff, any benefit realized as a result of Defendant's use and possession of the list is unjust enrichment.

47. Upon Information and belief, Defendant uses data derived from Plaintiffs' list to enrich the sum of information associated with any given email address – including key demographic information – that may crossover to other of email lists that Defendant manages, thereby enhancing the value of Defendants other property.

48. Plaintiff is entitled to recover her misappropriated property, and is also entitled to restitution of any amount that Defendant gained as a result of its misappropriation of the list.

## FIFTH COUNT: INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

49. Plaintiff re-alleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

50. As a result of Defendant's refusal to provide Plaintiff with the updated list, Plaintiff has been prohibited from entering into another contract to market and sell advertising to Plaintiffs email list.

51. Given the contractual relationship between the parties, Defendant had reason to know that upon termination of the contract, Plaintiff would seek to enter another agreement for marketing and advertising sales to the list.

52. Given Defendant's knowledge of the CAN SPAM Act, Defendant knew when it refused to provide an updated list that it was completely restricting Plaintiff's ability to enter into a contract regarding the list because of the liability that would arise for Plaintiff under the CAN SPAM Act.

53. As a result of Defendant's interference with Plaintiff's ability to contract, Plaintiff has been prevented from commercializing her list and engaging in activities with prospective business advantage, and has suffered significant economic harm.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs pray this Court:

54. Issue an order requiring that the Defendant must return a fully updated list that includes records of opted out emails, bounced emails, new emails, and any information obtained by or in the possession of Defendant as a result of its survey to the list, control of the list, or otherwise..

55. Issue an order requiring that the Defendant remove all e-mail's contained in the Plaintiff's list and other information associated with such emails from any location within the Defendant's control.

56. Issue an order that the Defendant must provide an accounting of all sales, rentals, or other uses of all lists it markets or maintains, the size of each such list at the time it was sold, rented, or used, and the price obtained for such sale, rental, or use, including that of Plaintiff for the purpose of ascertaining the scope of damages from Defendant's failure to exercise its best efforts to market Plaintiff's list.

57. Issue an order that the Defendant is required to continue to comply with the requirements of the contract, including the commitment contained in paragraph 20 that the Defendant will not defame or disparage the Plaintiff in any manner.

58. Award compensatory damages arising from Defendant's failure to adequately perform under the contract in the period between the completion of the contract (June 15) and 30 days subsequent to Defendant's October 26, 2011 notice of termination notice (effective November 25). Based on the accounting that Defendant has provided to Plaintiff to date, the compensatory damages would amount to a total of $6275.

59. Award compensatory damages arising from Defendant's complete failure to market or sell advertising during the 30 day post termination notice period in the amount of $0.01 per e-mail per day, approximately $950 per day, for an approximate total of $28,500 exclusive of interest.

60. Award damages arising from Defendant's breach of its contractual obligation to maintain the list in the amount of $1 per email, in order to compensate for the cost of contacting each recipient to verify that they did not opt out, for a total of approximately $95,000.

61. Award compensatory damages arising from Defendant's conversion and misappropriation of Plaintiff's property calculated per day that Defendant remains in exclusive possession of the amended list in the amount of $0.01 per e-mail for a total of approximately $950.00 per day, plus interest. As of December 20, 2011, the total amount would be $23,750, exclusive of interest.

62. Award the Plaintiff $1 million for any potential CAN SPAM liability that may arise as a result of Defendant's refusal to produce the updated list.

63. Award punitive damages arising from Defendant's conversion and misappropriation of Plaintiff's property in the amount of $0.01 per e-mail for a total of approximately $950.00 per day until Defendant turns over the revised list. As of December 20, 2011, the total amount would be $23,750, exclusive of interest.

64. Award restitutionary damages equal to any amount wrongfully gained by Defendant through its wrongful and continued possession of Plaintiff's property.

65. Award $0,02 per e-mail per day subsequent to December 20, 2011 for continuing damages arising from each of these Counts, until such time as Defendant has returned Plaintiffs property pursuant to the Contract for a total of $1900 per day exclusive of interest.

66. Award interest, costs and reasonable attorneys fees.

67. Award any other relief this court deems appropriate.

Respectfully Submitted,

_____
Dan Backer, Esq.
DC BAR# 996641
209 Pennsylvania Ave SE
Suite 2109
Washington, D.C. 20013
Office: (202) 210-5431
Fax: (360) 251-5431
Danbacker.esq@gmail.com
***Attorney for Plaintiff***