UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

DEBORAH JOHNS,                              )
                                           )
              Plaintiff,                    )
                                           )
       v.                                   )        Case:  1:11-cv-02258-RMC
                                           )
NEWSMAX MEDIA, INC.,                        )
                                           )
              Defendant.                    )
———————————————————————)

———————————————————————————————

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND/OR
IMPROPER VENUE OR IN THE ALTERNATIVE TO
STAY AND COMPEL ARBITRATION**
———————————————————————————————

Dan Backer (D.C. Bar No. 996641)
P.O. Box 75021
Washington, DC 20013
202.210.5431
dbacker@dbcapitolstrategies.com


*Attorney for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES…………………………………………………… ii, iii, iv

PRELIMINARY STATEMENT…………………………...…………………… 1

ARGUMENT…………………………………………………………………… 2

I.   THIS COURT POSSESSES PERSONAL
     JURISDICTION OVER NEWSMAX …………..……………….… 2

     A.  This Court Possesses Specific Jurisdiction Over Newsmax …… 2

     B.  This Court Possesses General Jurisdiction Over Newsmax …… 5

II.  THE DISTRICT OF COLUMBIA IS THE
     APPROPRIATE VENUE FOR THIS MATTER …………………... 6

III. PLAINTIFF'S CLAIMS SHOULD NOT
     BE SUBJECT TO ARBITRATION ……………………………….. 7

     A.  A Plain Reading Of Dispute Resolution Clause Does Not
         Compel Arbitration ……………………………………………... 8

         i.   The Dispute Resolution Clause Does Not Compel
              Arbitration …………………………………………………….. 8

         ii.  The Dispute Resolution Provision Was Written
              With Litigation In Mind …………………………………….… 9

         iii. Plaintiff's Claims Fall Outside The Purview Of The
              Dispute Resolution Clause ………………………………….… 10

     B.  Questions Of Arbitrability Should Be Decided By The Courts ... 13

     C.  Defendant Acted In Bad Faith, And Failure To Comply
         Or Respond To Plaintiff's Request For Return Of Property
         Waived Their Right To Alternative Dispute Resolution
         Methods …………………………………………………………… 14

CONCLUSION ……………………………………………………………… 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                **Page(s)**

*Armada Coal Export, Inc. v. Interbulk, Ltd.,*
     726 F.2d 1566 (11th Cir. 1984) …………………………………  10

*American Locomotive Co. v. Gyro Process Co.*,
     185 F.2d 316 (6th Cir. 1950) …………………………….............  14

*American Sugar Refining Co. v. The Anaconda*,
     138 F.2d 765 (5th Cir. 1943) …………………………………….  14

*AsahiMetal Indus. Co. v. Superior Court of Cal.,*
     480 U.S. 102, 110 (U.S. 1987) …………………………………  6, 7

*Bhim v. Rent-A-Ctr., Inc.,*
     655 F. Supp. 2d 137 (S.D. Fla. 2009) …………………………..  13

*Cornell & Co. v. Barber & Ross Co.,*
     360 F.2d 512 (D.C.Cir. 1966) …………………………………..  14, 15

*Crane v.New York Zoological Soc.,*
     894F.2d 454 (D.C. Cir 1990) …………………………………..  2

*Dean Witter Reynolds, Inc. v. Byrd,*
     470 U.S. 213 (1985) …………………………………………….  14

*Environmental Research International, Inc. v.*
     *Lockwood Greene Engineers, Inc.,* 355 A.2d 808 (D.C. 1976)…  3

*First Options of Chicago, Inc. v. Kaplan*,
     514 U.S. 938 (1995) …………………………………………….  13, 14

*Gorman v. Ameritrade Holding Corp.,*
     293 F.3d 506 (D.C. Cir. 2002) …………………………………..  5, 6

*Gregory v. Electro-Mechanical Corp.*,
     83 F.3d 382 (11th Cir. 1996) ……………………………………  12

*Henderson v. Coral Springs Nissan, Inc.,*
     757 So.2d 577 (Fla. Dist. Ct. App. 4th Dist. 2000) ……………..  8

*KlostersRederi A/S v. Arison Shipping Co.,*
     280 So.2d 678 (Fla.1973) ………………………………………  14

*Koteen v. Bermuda Cablevision, Ltd.,*
       913 F.2d 973 (D.C. Cir. 1990) ………………………………………      4, 7

*Lee v. State Comp. Ins. Fund,*
       2005 U.S. Dist. LEXIS 16900 (D.D.C. July 12, 2005) …………      2, 5

*Major League Baseball v. Morsani,*
       790 So.2d 1071 (Fla. 2001) ………………………………………      14

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
       708 F.2d 1458 (9th Cir. Cal. 1983) ……………………………..      11

*Michele Amoruso E Figli v. Fisheries Dev. Corp.,*
       499 F. Supp. 1074 (S.D.N.Y. 1980) …………………………….      11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
       388 U.S. 395 (1967) ………………………………………………      11

*Raymond James Fin. Services, Inc. v. Saldukas,*
       896 So. 2d 707 (Fla. 2005) ………………………………………..      14, 15

*Regency Group, Inc. v. McDaniels,*
       647 So.2d 192 (Fl. 1st DCA 1994) ……………………………..      9

*Robert Lawrence Co. v. Devonshire Fabrics, Inc.,*
       271 F.2d 402 (2d Cir. 1959) ……………………………………      14

*Seaboard Coast Line R.R. v. Trailer Train Co.,*
       690 F.2d 1343 (11th Cir. 1982) …………………………………      8, 9, 10

*Seifert v. U.S. Home Corp.,*
       750 So.2d 633 (Fla.1999) …………………………………………      7

*Shoppers Food Warehouse v. Moreno,*
       746 A.2d 320 (D.C. 2000) ………………………………………      3, 4, 6

*UlicoCas. Co. v. Fleet Nat'l Bank,*
       257 F. Supp. 2d 142 (D.D.C. 2003) …………………………….      2, 4

## <u>Codes, Rules and Statutes</u>

28 U.S.C. §1391 …………………………………………………………      6

D.C. Code §13-334 ………………………………………………………..      2, 5

D.C. Code §13-422 …………………………………………….. 2, 5

D.C. Code §13-423 …………………………………………….. 2, 3, 5

Fed. R. Civ. P. 12(b)(2) …………………………………………… 2

### PRELIMINARY STATEMENT

Newsmax Media, Inc.("Newsmax")("Defendant"), a Nevada corporation with its principal place of business in Florida, filed a Motion to Dismiss, incorrectly claiming a lack of personal jurisdiction, improper venue, and compulsory arbitration.

Plaintiff conducted the business that is the subject of this action through an office in the District of Columbia, a factwhich the Defendant was aware.  The specific business transacted in the District of Columbia included the negotiations for the Agreement, communications between the two parties, and payments to the Plaintiff.  In this manner, the Defendant purposely availed itself to the District of Columbia through its business contacts.  Moreover, Newsmax maintains a continuing business presence in the District of Columbia through its office in the in District of Columbia and the employment of a Washington Bureau Chief.Thus, this Court possesses personal jurisdiction, both specifically and generally, over Newsmax and, likewise, the District of Columbia remains the appropriate venue for this action.

Further, this matter should remain before this Court.  A plain reading of the dispute resolution clause in the Agreement does not compel arbitration because this clause was written with litigation in mind, does not survive the termination of the contract, Plaintiff's claims fall outside the purview of the dispute resolution clause in any event.Moreover, questions of arbitrabilityregarding this dispute resolution clause should be left to the courts. Additionally, the Defendant, through its bad faith dealings, own acts and omissions, and failure to return Plaintiff's property, effectively waived its right to alternative dispute resolution methods. Thus, this case should not be compelled to arbitration in the State of Florida, and should remain before this Court.

## ARGUMENT

### I.    THIS COURT POSSESSES PERSONAL JURISDICTION OVER NEWSMAX

The Plaintiff, as required by Federal Rule of Civil Procedure 12(b)(2), has met its burden establishing this court's personal jurisdiction over the Defendant. "The court may exercise personal jurisdiction over a non-resident defendant by finding either general or specific jurisdiction."  *UlicoCas. Co. v. Fleet Nat'l Bank,* 257 F. Supp. 2d 142, 144 (D.D.C. 2003)."In the District of Columbia, there are three separate statutory grounds for the exercise of personal jurisdiction over a corporation. The plaintiff may establish 'general' personal jurisdiction underD.C. Code §13-334(a)orD.C. Code §13-422.The plaintiff may establish 'specific' personal jurisdiction underD.C. Code §13-423, the District of Columbia's long-arm statute."*Lee v. State Comp. Ins. Fund,* 2005 U.S. Dist. LEXIS 16900 (D.D.C. July 12, 2005).   Further, in determining whether personal jurisdiction has been established, "the Court should resolve any factual discrepancies with regard to the existence of personal jurisdiction in favor of the plaintiff."  *Id.See also Crane v. New York Zoological Soc.,* 894F.2d 454, 456 (D.C. Cir 1990).

### A.    This Court Possesses Specific Jurisdiction OverNewsmax

The Court's specific jurisdiction in this matter is provided by the District of Columbia's long-arm statute.  In relevant part, the District of Columbia's long-arm statute provides that(a) a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim arising from the person's: (1) transacting any business in the District of Columbia; contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act

or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia. D.C. Code §13-423.Likewise, the court's exercise of personal jurisdiction under the District of Columbia's long-arm statute must satisfy the "minimum contacts" requirement of the due process clause. *See Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 324-325 (D.C. 2000).

The District of Columbia Court of Appeals has noted that "(2) there are no 'mechanical tests' or 'talismanic formulas' for the determination of personal jurisdiction under §13-423 (a)(1) and (b), and the facts of each case must be weighed against notions of fairness, reasonableness and substantial justice; (3) under the due process clause, the minimum contacts principle requires us to examine the quality and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental."*Shoppers,*746 A.2d at 329. Further, "even a small amount of in-jurisdiction business activity is generally enough to permit the conclusion that a nonresident defendant has transacted business here." *Id*. at 331 *citingEnvironmental Research International, Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 811 (D.C. 1976).Therefore, for in establishing jurisdiction, "the long-arm statute requires that the claim raised have a discernable relationship to the 'business' transacted in the District." *Shoppers,* 746 A.2d at 329.

In its relationship with the Plaintiff, the Defendant has "transacted business" within the District of Columbia.  As noted in the Complaint, the "Plaintiff conducts the business that is the subject of this action through a Washington, DC, office."*See* Complaint ¶4.  The original business connection between the Plaintiff and Defendant occurred at a trade show in the District of Columbia.  Following this meeting, Plaintiff then negotiated the Agreement with the Defendant from its office in the District of Columbia.  After the Agreement was reached, all further communication with the Defendant occurred through the Plaintiff's office in the District of Columbia.  Likewise, the Defendant was directed to, and did, send all payments to the Plaintiff to the District of Columbia.Therefore, by entering into an agreement, communicating, and sending payments to the Plaintiff through her agent in the District of Columbia, the Defendant has purposefully transacted business within the District of Columbia.

While the Defendant notes that it negotiated, executed, and performed the Agreement within the State of Florida (*See* Motion to Dismiss p.15; Ruddy Aff. ¶¶9,10), "a defendant need not be present in the District of Columbia to transact business here." *Ulico,* 257 F. Supp. 2d at 145.Through the Agreement and subsequent business dealings with the Plaintiff, the Defendant made "voluntary" and "deliberate" business transactionswith the District of Columbia, thus satisfying the minimum contacts andnotions of fair play and substantial justice that due process requires.  *See Koteen v. Bermuda Cablevision, Ltd.,* 913 F.2d 973, 975 (D.C. Cir. 1990); *See also Shoppers,*746 A.2d at 331; *Ulico,* 257 F. Supp. 2d at 146.Likewise, the Plaintiff's claim has a "discernable relationship" to the business transacted in the District of Columbia.

4

The District of Columbia's long-arm statute also confers personal jurisdiction onto the Defendant based upon the torts of conversion and misappropriation committed by the Defendant committed against the Plaintiff. *See* Complaint ¶¶35-48; D.C. Code §13-423. Defendant's actions over the course of the business relationship and continuing refusal to return the list to the Plaintiff have resulted in tortious injury to the Plaintiff in the District of Columbia.

For the foregoing reasons, the Court possesses personal jurisdiction over Newsmax.

**B.     The Court Possesses General Jurisdiction Over Newsmax**

General jurisdiction can be established in the District of Columbia upon a corporate entity by satisfying either D.C. Code §13-334 or D.C. Code §13-422. "The test for general jurisdiction is whether defendant's contacts with the District of Columbia arecontinuous and systematic." *Lee,*2005 U.S. Dist. LEXIS 16900 *citing Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 509 (D.C. Cir. 2002). Like personal jurisdiction established under the District of Columbia's long-arm statute, general jurisdiction must also meet the minimum contacts required by due process. *SeeLee,*2005 U.S. Dist. LEXIS 16900. As discussed, Defendant's dealings with Plaintiff satisfy minimum contacts test.

The District of Columbia's general jurisdiction applies to the Defendant because of the Defendant's "systemic and continuous business activity" in the District of Columbia. *SeeLee,*2005 U.S. Dist. LEXIS 16900. As noted in the Motion to Dismiss and Ruddy Affidavit, Newsmax does sublet an office in the District of Columbia, through which it contracts services from two independent contractors. *See*Motion to Dismissp.2-

3, Ruddy Aff. ¶¶7, 8.Through this office, Defendant has "purposefully availed" itself to the District of Columbia by contracting business within the District of Columbia.*See AsahiMetal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 110 (U.S. 1987).This office, along with Newsmax's Washington Bureau Chief, provides Defendant with a "continuing presence" in the District of Columbia.*See Gorman,* 293 F.3d at 509. Likewise, due to these business contacts with the District of Columbia, the Defendant should "reasonably anticipate being haled into court" in the District of Columbia.*See Shoppers,*746 A.2d at 324.

The applicable statute to establish general jurisdiction, D.C. Code §13-334(a), does require service of process in the District of Columbia.*See* D.C. Code §13-334(a). However, Defendant's Motion to Dismiss notes that it waived any claim related to improper service.  *See* Motion to Dismiss p.5, fn 1 ("Rather than contest improper service, Newsmax agreed to waive its claim that service was defective in exchange for a sixty-day extension of time to answer …").

For the foregoing reasoning, the Court possesses general jurisdiction over Newsmax.

## II.    THE DISTRICT OF COLUMBIA IS THE APPROPRIATE VENUE FOR THIS MATTER

The District of Columbia is the appropriate venue.  Venue in this matter is found pursuant to 28 U.S.C. §1391, which states that venue is proper where:  "for purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced …"  *See* 28 U.S.C. §1391(c).  As has been shown, the Defendant was subject

to personal jurisdiction in the District of Columbia at the time the action was commenced, thus making the District of Columbia the proper venue for this matter.

Further, "when minimum contacts have been established, often the interests of the plaintiff and the forum in exercise of jurisdiction will justify even the serious burdens" on out of state defendants. *Koteen,*913 F.2d at 975 *citingAsahi,* 480 U.S. at 110. However, in the Motion to Dismiss, Newsmax does not argue that it would face a "serious burden" contesting this matter in the District of Columbia, merely that it is a less convenient venue. Rather, it would be the Plaintiff who would face an undue economic burden if this matter was transferred to the State of Florida, an unfamiliar jurisdiction where she would have to retain additional counsel.

For the foregoing reasons, the District of Columbia remains the appropriate venue for this matter.

## III.   PLAINTIFF'S CLAIMS SHOULD NOT BE SUBJECT TO ARBITRATION

The controversies in this action fall outside the scope of the purported dispute resolution clause, and do not compel Plaintiff to submit to arbitration. Courts consider three elements in determining whether arbitration is appropriate in a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Seifert v. U.S. Home Corp*., 750 So.2d 633, 636 (Fla. 1999).

In the case at hand, no valid argument exists which compels Plaintiffs to arbitration under the dispute resolution clause. The dispute resolution clause does not survive termination of the contract, was clearly written with the acknowledgement that litigation was a viable possibility, and the majority of Plaintiff's claims do not fit within

the narrow scope of the dispute resolution clause, even if it was in effect.  Assuming the

arbitration clause was applicable in the instant case, without a clear indication the parties

intended to use an arbiter to determine questions of arbitrability, this determination is left

to the courts.  Finally, even if the claims were subject to arbitration, Defendant waived its

right to alternative dispute resolution by failing to request arbitration, and acting in bad

faith by failing to timely respond or comply with Plaintiff's requests for return of her

property.

     **A.**     **A Plain Reading of The Dispute Resolution Clause Does Not Compel Arbitration**

          *i.*     *The Dispute Resolution Clause Does Not Survive Termination of the Agreement*

Defendant's reliance on case law in an attempt to conjure up a right of

survivorship for a dispute resolution clause upon termination of this agreement is

misplaced.[1]  Defendants argue that the dispute resolution clause survives termination of

the Agreement because there are no provisions excluding disputes arising after

termination.  This argument contradicts the parties' decision to explicitly include a

survivorship provision in five other clauses of the same Agreement.[2] *See* Managing

Agreement ¶¶ 10, 17-20.

Under Florida case law, a determination of whether a dispute resolution clause

requires arbitration of a particular dispute rests on the "intent of the parties."  *Seaboard*

---

[1] *Cf. Henderson v. Coral Springs Nissan, Inc.*, 757 So.2d 577, 578 (Fla. 4th Dist. Ct. App. 2000)(holding an arbitration clause did not survive termination of an agreement when it was unilaterally rescinded even though it contained a broad arbitration clause which read "any controversy or claim arising out of or relating to this contract or breach thereof shall be settled by arbitration").

[2] The specific language in the named clauses states "The obligations of this paragraph shall survive the termination of this Agreement."*See*Marketing Agreement¶¶ 10, 17-20.

*Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982); *see also*

*Regency Grp., Inc. v. McDaniels*, 647 So.2d 192, 193 (Fla. 1st Dist. Ct. App. 1994).

Absent evidence to the contrary, the dispute resolution clause cannot be read as surviving

termination of the agreement.   Defendant's only argument referring to a plain reading of

the dispute resolution clause is that it fails to include a provision declining to extend that

clause after termination.   Had the parties intended for the dispute resolution clause to

survive termination of the agreement, they would have included a survivorship provision

similar to the one found in a number of other clauses in the agreement.   Clearly, the

parties had control of and carefully chose which clauses would survive termination of the

agreement and which ones would not, and did not intend this clause to survive.

          ii.      *The Dispute Resolution Clause Was Written With Litigation in Mind*

      The language of the dispute resolution clause was constructed with litigation in

mind, and plainly reads as written with the intent of preventing an anticipatory breach.

Both parties recognized the potential for litigation and envisioned the possibility that

issues could arise which would be more suitable for judicial interpretation.   In fact, the

dispute resolution clause specifically waives a trial by *jury*, but not a bench trial, and also

provides its own statute of limitations, precluding lawsuits from being brought more than

one year after the date of service of the subject of such action, suit or proceeding.   *See*

Marketing Agreement ¶ 23.

      Defendant now attempts to forestall the very litigation envisioned by the dispute

resolution clause.   Upon notice of termination of the contract, and for a substantial period

of time thereafter, Defendant failed to comply with the terms of the contract and

cooperate with Plaintiff's repeated requests to return the e-mail list by responding that it

is not the "position of the company to return updated files." *See* Exhibit A (email exchange between Dan Backer and Nancy Harrington), pg. 3, #1.  Defendant's response that they chose not to return Plaintiff's property because it is not the company's position to do so demonstrates they were choosing this route as a matter of company policy, rather than a required obligation under the contract.  In response to Defendant's stance that company policy precluded them from returning Plaintiff's list, Plaintiff's attorney pointed specifically to the Defendant's obligations under the contract, which required them to maintain and update the list, honor all opt-out requests, and that "the List shall remain the sole property of [*sic*] list owner."  *See* Ex. A, pg. 2, #2.  Plaintiff's desire to resolve this matter by performance of the contract, and refusal of Defendant to do so, necessitating expensive and burdensome litigation, is in itself an act of blatant disregard not only the entire contract, but specifically the dispute resolution clause that *Defendant* did not timely invoke.

iii.    *Plaintiff's Claims Fall Outside the Purview of the Dispute Resolution Clause*

Because of their contractual nature, construction of dispute resolution clauses and the contracts in which they appear, remains a matter of contract interpretation.  *See Seaboard,* 690 F.2d at 1352.  The argument that but for the contract, no other disputes would have arisen between the contracting parties has been previously rejected by the Florida circuit and is insufficient to conclude a dispute is one "arising out of or relating" to the agreement. *Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566, 1568 (11th Cir. 1984); *see also Seaboard,* 690 F.2d at 1351.

While there is certainly a connection between Plaintiff's claims and the parties' relationship (*i.e.* but for the two parties having entered into this Agreement there would

have been no breach of contract, conversion, misappropriation, or interference with prospective business advantage), the facts at hand and the specific language in the dispute resolution clause together do not demonstrate a sufficiently close relationship to conclude that all Plaintiff's allegations are disputes arising out of the performance of the Agreement itself. The language of the dispute resolution clause reads that it is to cover disputes which "*may materially affect the performance*…under the Agreement," which is much narrower than alternative language the parties could have used such as "relating to" the Agreement. Although Defendants attempt to assert the broad nature of the dispute resolution clause as written, a claim which *relates* to an agreementis far broader and would encompass significantly more actions than one which *materially affects the performance* under an agreement. Plaintiff's claims for conversion, misappropriation, and interference with business dealings do not relate to the interpretation and performance of the contract and therefore do not fall under the narrow class of cases subject to arbitration which "arise under" the Agreement.[3]*See Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (finding the phrase "arising under," to be much more narrow in scope than the phrase "relating to" in a dispute resolution clause); *see alsoMichele Amoruso E.Figli v. Fisheries Dev. Corp.,* 499 F. Supp. 1074, 1080 (S.D.N.Y. 1980) (holding that inclusion in an arbitration agreement of the phrase "relating to," or words of the like, would require the issue of fraud in the inducement to be resolved by an arbitrator, while disputes "arising out of" a

---

[3]This determination does not run afoul the Supreme Court's holding in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), which involved a broad arbitration clause that provided for arbitration of all disputes "arising under" or "relating to" the parties' agreement. In that case, the Supreme Court held that the allegations of fraud in inducement relating to *creation of the arbitration clause itself*, rather than relating to the entire contract, were to be decided by the arbitrators. 388 U.S. at 404 (emphasis added).

did not encompass a dispute over fraudulent inducement and was therefore to be resolved by the courts).

     As noted above, the case before this court involves a narrow dispute resolution clause and therefore only covers controversies "arising under" the Agreement.  The torts alleged in the instant action all occurred after termination of the contract and stem from Defendant's uncooperative attitude, and bad faith dealings favoring the "position of the company," rather than the company's contractual obligations.  Accordingly, this Court should find Plaintiff's claims do not "arise under" the Agreement, and therefore are not subject to arbitration.  Defendant seeks to magically produce an arbitration clause out of the cloth of a dispute resolution clause which undoubtedly expired once Defendant terminated the Agreement between the parties.

     Although the Florida circuit declined to adopt the distinction between "arising under" and "relating to," in *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382 (11th Cir. 1996), *Gregory* is distinguishable from the case at hand.  In *Gregory*, the court found that the factual allegations referenced in the breach of contract claim were the same facts constituting default under the contract, and thus, were a critical part of the so-called tort claims.  *Id.* at 384.  Accordingly, the court reasoned, if the parties had complied with the contract, there would be no tort claims.  *Id.*

     Like *Gregory*, the instant case incorporates all the same facts in asserting its breach of contract claims as well as its tort claims, however, this is not dispositive in determining all Plaintiff's claims relate to disputes which materially affect performance of the contract.  The purpose of re-alleging and incorporating by reference the statement of facts is to save the reader and the writer the time and energy of repeating the same

12

pertinent facts for each account.  Plaintiff's claims in the instant case for conversion, misappropriation, and interference with prospective business advantage, each assert with specificity additional facts relevant to those torts, and also all relate to actions subsequent to termination of the Agreement.  The counts for each tort do not merely incorporate the previously stated facts, but rather introduce additional evidence to support commission of the torts by Defendant.

Defendant's argument that the dispute resolution clause should be interpreted broadly is unpersuasive.  Based on the narrow scope limiting dispute resolution to matters which "materially affect performance," the majority of Plaintiff's claims, involving torts, and not breach of contract claims, do not fit under this umbrella and are better suited for judicial interpretation, rather than for arbitration.Even if the dispute resolution clause is construed to be broad in scope, as Defendant argues, it certainly does not cover the majority of Plaintiff's tort claims: conversion, misappropriation, and interference with prospective business advantage claims.  Arbitration or judicial determination on some, but not all of the Plaintiff's claims, would be inappropriate because the dispute resolution clause itself anticipates litigation and because Defendant has refused to act in accordance with the contract, thus necessitating this litigation.  Defendant's unreasonableness should not be rewarded, and in the interest of judicial economy, the courts should resolve all Plaintiff's claims together.

**B.       Questions of Arbitrability Should Be Decided by the Courts**

Arbitrability is generally a question for the trial court, and not the arbitrator, unless the parties "clearly and unmistakably" provide otherwise.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Bhim v. Rent-A-Ctr., Inc.,*655

F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).  Without clear and unmistakable evidence that the contracting parties intended an arbitrator (rather than a court) to resolve questions of arbitrability, courts "should *independently* decide whether an arbitration panel has jurisdiction over the merits of any particular dispute." *First Options*, 514 U.S. at 941 (1995) (emphasis in original).  Because the dispute resolution clause in the instant case lacks a clear indication that the parties intended to use an arbitrator to determine questions of arbitrability, these questions should be left to the court.

      C.      **Defendant'sFailure to Request An Arbitration and Failure to Comply or Respond to Plaintiff's Request for Return of PropertyServes As An EffectiveWaiver of itsRight to Alternative Dispute Resolution Methods**

The right to arbitration, like any contract right, may be waived.*Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (*citingCornell & Co. v. Barber & Ross Co.,* 360 F.2d 512, 513 (D.C.Cir. 1966)).[4]The Supreme Court has made clear that the "strong federal policy in favor of enforcing arbitration agreements" is based on the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985).

A "waiver" is defined as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right. *Raymond James,* 896 So. 2d at 711 (*citing Major League Baseball v. Morsani,* 790 So.2d 1071, 1077 n. 12 (Fla. 2001)).  One way a party's rightto dispute resolution may be waived is by taking action inconsistent with the contractual right to arbitration.  *KlostersRederi A/S v. Arison Shipping Co.,* 280 So.2d 678, 680 (Fla.1973).Thus, the question of whether there has been waiver in the dispute

---

[4]*See also Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412-13 (2d Cir. 1959); *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316 (6th Cir. 1950); *Am. Sugar Refining Co. v. The Anaconda*, 138 F.2d 765 (5th Cir. 1943).

resolution clause context should be: whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right. *Raymond James,* 896 So. 2d at 711 (*citing Cornell,* 360 F.2d at 513).

Immediately upon termination of the contract, Plaintiff, by and through her attorney, requested return of the e-mail list from Defendant. *See* Complaint at ¶ 19. Defendant refused to produce the revised list despite repeated requests by Plaintiff to do so. *Id.* at ¶ 20. At no time between Defendant's termination of the contract and Plaintiff's initiation of suit did Defendant request arbitration. On December 12, 2011, Plaintiff's attorney provided notice to Defendant's attorneys that unless they returned the e-mail list in a manner consistent with the contract by the close of business on December 15, 2011, Plaintiff's attorney would initiate suit. *See* Ex. A, pg. 2, #3. On December 13, 2011, in the final email correspondence received from Defendant's counsel, Defendant indicated the issue was being reviewed internally and that they would reply to Plaintiff's counsel December 14, 2011. *See* Ex. A, pg. 1, #4. On December 19, 2011, after Defendant's counsel failed follow-up as promised, Plaintiff's counsel sent a courtesy copy of the complaint to Defendant's counsel via email with a notice that it would be filed in court the following day. Ex. A, pg. 1, #5.

Not only was Defendant's counsel unwilling to work toward an amicable resolution, but at no time during the nearly two months in which Plaintiff sought to efficiently resolve this matter solely through specific performance, did Defendant's counsel suggest or even mention arbitration as an alternative to litigation. Despite numerous requests by Plaintiff to resolve this matter in a cordial manner, Defendant's callous attitude toward resolution, and their failure to even attempt to invoke the

arbitration clause when they had the opportunity to do so, effectively waived their right to arbitration.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is without merit. This Court possesses personal jurisdiction, both specific and general, over the Defendant, and compelled arbitration is not warranted.    Thus, this matter should remain to be litigated before this Court in the District of Columbia.


Dated:  March 13, 2012



Respectfully submitted,



_____
Dan Backer (DC Bar No. 996641)
PO Box 75021
Washington, DC 20013
202. 210.5431
dbacker@dbcapitolstrategies.com

16