**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **DEBORAH JOHNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-02258 (RMC)** |
| | ) | |
| **NEWSMAX MEDIA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## OPINION ON DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR COMPEL ARBITRATION

Deborah Johns contracted with Newsmax Media, Inc. ("Newsmax") to provide advertising and marketing services to her. Newsmax was to arrange for email advertisements and distribute these advertisements to Ms. Johns' email list of approximately 100,000 individuals. Less than five months after entering into the agreement, Newsmax terminated it. Ms. Johns then instituted this breach of contract suit.

Pending before the court is a motion to dismiss filed by Newsmax contending that the Court lacks personal jurisdiction over Newsmax and that venue in the District of Columbia is improper. Alternatively, Newsmax argues for an order to stay proceedings and to compel arbitration based upon an arbitration clause in the parties' agreement. Ms. Johns opposes the motion contending that jurisdiction and venue are proper and that the arbitration clause is unenforceable. The Court will deny the motion to dismiss but will grant the motion to stay the case and compel arbitration.

- 1 -

# I.  FACTS

Newsmax is a news media organization headquartered in Florida and incorporated in Nevada.  Ruddy Aff., [Dkt. 4-2] ¶ 5.  It employs a "Washington Bureau Chief," who works out of a home office in Maryland.  *Id.* ¶ 7.  It sublets an office within the District of Columbia, where it employs two independent contractors whose work is not related to the present dispute.  *Id.* ¶ 8.  Ms. Johns resides in Roseville, California, and conducted the business subject to this dispute through an office located in the District of Columbia.  Compl. ¶ 4.

After making their original business connection at a trade show in the District of Columbia,[1] Ms. Johns and Newsmax entered into a written contract for marketing services (the "Agreement").  *Id.* ¶ 8.  The Agreement was negotiated via telephone from Ms. Johns' office in the District and Newsmax's office in Florida.  Opp'n at 4.  In accordance with the Agreement, Ms. Johns gave Newsmax a list containing approximately 100,000 email addresses for Newsmax to provide the associated marketing services.  Compl. ¶¶ 9-10.  Newsmax also agreed to maintain and update the email list on a monthly basis.  *Id.* ¶ 13.  The list at all times remained the property of Ms. Johns.  *Id.* ¶ 12.  The Agreement included a dispute resolution clause that requires the parties to arbitrate "any [unresolved] controversies, claims, or disputes which may materially affect the performance of either Party under th[e] Agreement." Compl., Ex. 1 ("Marketing Agreement") ¶ 23.  After finalizing the Agreement, Newsmax sent all payments and communications to Ms. Johns' District of Columbia office.  Opp'n at 4.  On October 26, 2011, Newsmax terminated the Agreement through an email sent to Ms. Johns.  Compl. ¶ 15.  Newsmax then ceased marketing activity with the list and later refused Ms. Johns' request to return the updated list in accordance with the Agreement.  Compl. ¶ 19.  Ms. Johns sues for

---

[1] Memo. in Opp'n to Mot. to Dismiss [Dkt. 6] ("Opp'n") at 4.

breach of contract, conversion, misappropriation, and interference with prospective business

advantage.

## II.  LEGAL STANDARD

### A.  Personal Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the

plaintiff bears the burden of establishing a factual basis for the court's exercise of personal

jurisdiction over the defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir.

1990).  The plaintiff must allege specific acts connecting the defendant with the forum.  *Second*

*Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  Bare

allegations and conclusory statements are insufficient.  *See id.*

In determining whether a factual basis for personal jurisdiction exists, the court

should resolve factual discrepancies in the record in favor of the plaintiff.  *Crane*, 894 F.2d at

456.  However, the court need not treat all the plaintiff's allegations as true.  *United States v.*

*Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  Instead, the court "may receive

and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional

facts."  *Id.*

Because Ms. Johns brings a breach of contract action independent of federal law,

the Court looks to the law of the District of Columbia to determine whether Newsmax may be

sued in this jurisdiction.  Three statutory provisions are relevant in determining whether a local

court may exercise personal jurisdiction over a defendant in the District of Columbia.  The first,

D.C. Code § 13-422, grants general jurisdiction by permitting a local court to "exercise personal

jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its

principal place of business in, the District of Columbia."  D.C. Code § 13-422 (2005); *see also*

*Richard v. Bell Atl. Corp.*, 946 F. Supp. 54, 73-74 (D.D.C. 1996) (holding that a D.C. mailing address alone is insufficient to establish general personal jurisdiction absent allegations regarding residence or personal place of business); *Dickson v. United States*, 831 F. Supp. 893, 897 (D.D.C. 1993). The second provision is D.C. Code § 13-334, which grants general jurisdiction over foreign corporations who have been served within the District and do consistent business within the District. *See* D.C. Code § 13-334 (2005); *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981). The third relevant provision, D.C. Code § 13-423, is D.C.'s long arm statute and grants specific jurisdiction. Under the long arm statute, personal jurisdiction exists over a person as to a claim for relief arising from that person

> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a) (2005); *see also GTE New Media Servs. v. Bellsouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Subsection (b) limits the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." D.C. Code § 13-423(b).

Under both specific and general jurisdiction, the exercise of jurisdiction must also meet the constitutional requirements of due process. *Capital Bank Int'l. Ltd v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 75 (D.D.C. 2003). The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the plaintiff to demonstrate "'minimum contacts' between the

defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002).  These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988).  In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The D.C. long arm statute, D.C. Code § 13-423, "is given an expansive interpretation that is coextensive with the due process clause." *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (internal quotation marks omitted).  Thus, "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

### B.  Venue

A plaintiff can bring an action in: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  28 U.S. C. § 1391(b).

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems

appropriate." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). "If the plaintiff's

chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the

Court may dismiss the action or transfer the case to a district where venue would be proper or

more convenient." *Id.* (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue

is defective) and 28 U.S.C. § 1404 (allowing a district to transfer venue "for the convenience of

the parties and witnesses")). "Because it is the plaintiff's obligation to institute the action in a

permissible forum, the plaintiff usually bears the burden of establishing that venue is proper."

*Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

   In ruling on a motion to dismiss for lack of venue, the question is not which

district is the "best" venue, *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994), or

which venue has the most significant connection to the claim, *Weinberger v. Tucker*, 391 F.

Supp. 2d 241, 244 (D.D.C. 2005). The question is "whether the district the plaintiff chose had a

substantial connection to the claim, whether or not other forums had greater contacts." *Setco

Enters.*, 19 F.3d at 1281.

### C. Arbitration

   The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16, was adopted by Congress

"to establish an alternative to the complications of litigation." *Revere Copper & Brass v.

Overseas Private Inv. Corp.*, 628 F.2d 81, 83 (D.C. Cir. 1980). "By agreeing to arbitrate, a party

trades the procedures and opportunity for review of the court [ ] for the simplicity, informality,

and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)

(internal quotation marks omitted). An individual who agrees to arbitrate her claims does not

forego her substantive rights afforded by statute; she merely submits to resolution in an arbitral

rather than a judicial forum. *Id.* at 26.

When a party seeks arbitration, the Court must first determine whether there is a valid agreement to arbitrate. *Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 150 (D.D.C. 2002). Then, the Court must determine whether the specific dispute falls within the scope of the arbitration agreement. *Id*. To determine whether there is a valid arbitration agreement, federal courts apply ordinary state law contract principles. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Doubts regarding an arbitration provision must be resolved in favor of coverage. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). When a contract is not ambiguous, a court must interpret it according to its plain meaning. *May v. Continental Cas. Co.*, 936 A.2d 747, 751 (D.C. 2007). "A contract is not ambiguous merely because the parties disagree over its meaning. Rather, a contract is ambiguous if, on its face, it has more than one reasonable interpretation." *Id*. (citations omitted).

## III. ANALYSIS

Generally, a federal court must address jurisdictional issues before addressing any merit-based claims. *See, e.g., Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430-31 (2007); Wright & Miller, 5A Federal Practice and Procedure § 1351, at 270 (4th ed. 2004) ("As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint."). Thus, the Court will address the issues of jurisdiction and venue before turning to Newsmax's arbitration claim.

### A. Personal Jurisdiction

#### 1. General Jurisdiction

Ms. Johns has failed to plead sufficient facts to establish general jurisdiction. Under D.C. Code § 13-422, a plaintiff can satisfy general jurisdiction by establishing one of three elements: 1) that the defendant is domiciled in D.C.; 2) that the defendant is incorporated under the laws of D.C.; or 3) that the defendant maintains its principle place of business in D.C. D.C. Code § 13-422 (2005). Ms. Johns has not plead facts sufficient to satisfy any of these elements, and actually does the opposite, admitting that the defendant is headquartered, incorporated, and resides in Florida. Compl. ¶¶ 5-6. Thus, general jurisdiction cannot be granted on the basis of D.C. Code § 13-422.

Ms. Johns has also failed to plead sufficient facts to establish general jurisdiction under D.C. Code § 13-334. Under this statute, a plaintiff must show that a foreign corporation "carries on a consistent pattern of regular business activity" in the District and that there was proper service of process on the corporation within the District. *AMAF Int'l Corp.*, 428 A.2d at 850. If a company is not served in the District of Columbia, it cannot be subject to general jurisdiction under § 13-334. *Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 102 (D.D.C. 2010); *see also Gowens v. Dyncorp*, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (finding no general jurisdiction under § 13-334 because Dyncorp was served at its Virginia headquarters rather than in the District); *Everett v. Nissan Motor Corp. in U.S.A.*, 628 A.2d 106, 108 (D.C. 1993) (finding service of process in California bars general jurisdiction under § 13-334). In the present case, Newsmax was served at its headquarters in West Palm Beach, Florida. Ruddy Aff. ¶ 2. Therefore, general jurisdiction under § 13-334 cannot be established.

Ms. Johns contends that the parties reached an agreement to waive any improper service claims, thus eliminating the service of process element of § 13-334 in this analysis. Proper service inside the District of Columbia, however, is a mandatory requirement of § 13-334. *See Nat'l Resident Matching Program*, 720 F. Supp. 2d at 102; *Gowens*, 132 F. Supp. 2d at 42. Even assuming this mandatory requirement could be waived, Newsmax has not done so. Newsmax waived any challenge to the service of process under Federal Rule of Civil Procedure 4, but it did not agree to waive jurisdictional defenses nor did its waiver extend to agreeing service was properly accomplished in the District of Columbia. *See* Renewed Joint Consent Mot. for Extension of Time [Dkt. 3]. Thus, the parties' agreement with respect to service does not appear to affect general jurisdiction under § 13-334.

## 2. Specific Jurisdiction

However, Ms. Johns also claims that the Court has specific jurisdiction over the defendant under D.C. Code § 13-423 which provides for jurisdiction over persons "transacting any business in the District of Columbia . . . ." D.C. Code § 13-423(a)(1). In support, Ms. Johns alleges that she conducted the business that is subject to this action from her office in Washington, D.C; that Newsmax made the original business contact that led to the Agreement at a convention in the District; that Newsmax negotiated the Agreement over the telephone with Ms. Johns' from the latter's D.C. office; that after the Agreement was reached, all communications between the parties occurred through Ms. Johns' D.C. office; and that Newsmax mailed all contract payments to Ms. Johns' D.C. office.[2]

---

[2] Newsmax argues that most of these factual allegations are inadmissible because they were not pled in the Complaint or supported by an affidavit. Newsmax, however, does not dispute the validity of any of these facts. Because the Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the

These facts establish that Newsmax "transact[ed] . . . business in the District of Columbia" sufficient to establish specific jurisdiction over Newsmax with respect to this suit. D.C. Code § 13-423(a)(1).  This "transacting business analysis" is coextensive with the due process requirement and thus is a merged, single inquiry.  *Ferrara*, 54 F.3d at 828.  To satisfy this due process requirement, the defendant must purposefully avail itself of the forum state. *Asahi Metal Indus.*, 480 U.S. at 109.  Purposeful availment is meant to prevent unilateral activities of the plaintiff from granting personal jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  D.C. courts have long held that no physical presence is necessary to qualify as transacting business and purposeful availment under the long arm statute, but only some "minimal nexus" to the District is required.  *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005); *see also Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979). Newsmax has a "minimal nexus" with the District based on the combination of four affirmative actions: forming the business relationship that led to the Agreement at a conference in the District, calling Ms. Johns' D.C. office to negotiate the Agreement, further communications with Ms. Johns' D.C. office after the Agreement was consummated, and mailing payments under the Agreement to Ms. Johns' D.C. office.  These actions demonstrate that Newsmax "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Helmer*, 393 F.3d at 205 (quoting *Int'l Shoe Co.*, 326 U.S. at 316) (alteration in original).

---

case," *Hassan v. Holder*, 793 F. Supp. 2d 440, 444 (D.D.C. 2011), and because Newsmax does not dispute the accuracy of these alleged facts, the Court relies upon them.

## B. Venue

The District of Columbia is an appropriate venue for this action.  28 U.S.C. § 1391 governs proper venue in federal court, and states that a lawsuit may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  According to the statute, a defendant company resides in a district when "such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."   28 U.S.C. § 1391(c)(2).  Because the Court has found that Newsmax is subject to personal jurisdiction in the District of Columbia, Newsmax also "resides" in the District for the purposes of venue.   Thus, venue in the District is appropriate.

Newsmax argues that even if venue is appropriate in the District, the Court should nonetheless transfer the action to the Southern District of Florida.  A court may authorize such a transfer, even when venue is proper, "for the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a); *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 31 (D.D.C. 2004).  Newsmax bears the burden of demonstrating that transfer is proper.  *See, e.g., Trout Unlimited v. U.S. Dept. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).  To do so, Newsmax must first show that the action could have been brought in the Southern District of Florida.  *Schmidt,* 322 F. Supp. 2d at 31.  This requirement is met because Newsmax "resides" in the Southern District of Florida (*i.e.*, the Southern District of Florida has personal jurisdiction over Newsmax). 28 U.S.C. § 1391(b)(1) & (c)(2).  Secondly, Newsmax must demonstrate that the "interests of justice" warrant a transfer.  Relevant factors in this inquiry include: plaintiff and defendant's choice of forum, whether the claim arose elsewhere, the convenience of the parties, the convenience to witnesses, the ease of access to sources of proof, the transferee's familiarity with

the governing laws, the work load on potential transferee and transferor court calendars, and the interest in deciding local disputes at home. *Trout Unlimited,* 944 F. Supp. at 16.  Newsmax, however, fails to discuss these factors, let alone demonstrate that they warrant a transfer.  As such, Newsmax has failed to meet its burden demonstrating that transfer is appropriate, and the Court will deny its request.

### C.  Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides for a stay of litigation in any case raising a dispute referable to arbitration and an order compelling the parties to engage in arbitration.  9 U.S.C. §§ 3 & 4.  The United States Supreme Court has ruled that the FAA sets a "liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)).  The FAA also establishes that disputes over the scope of arbitrable issues should be decided in favor of arbitration.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

The Agreement contains an arbitration provision which states:

Dispute Resolution.  Both parties agree to make their best efforts to communicate and resolve any controversies, claims, or disputes which may materially affect the performance of either Party under this Agreement within two (2) weeks of the dispute being communicated.  Any disputes that cannot be mutually resolved will then be settled by arbitration in the State of Florida, in accordance with the laws of the State of Florida and the rules of the American Arbitration Association.  Judgement of the award made by the arbitrators may be entered in any Court having jurisdiction thereof. EACH PARTY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT AGAINST THE OTHER FOR ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT. NO ACTION, SUIT OR PROCEEDING SHALL BE BROUGHT AGAINST THE OTHER PARTY MORE THAN

ONE YEAR AFTER THE DATE OF SERVICE PERFORMED
THAT IS THE SUBJECT OF SUCH ACTION, SUIT OR
PROCEEDING.

Compl., Ex. 1 ¶ 23. (emphasis in original).  Ms. Johns argues that the arbitration provision

should not be enforced because (1) her claims fall outside of the arbitration provision, (2) the

clause does not survive termination of the Agreement, (3) Newsmax has waived the arbitration

provision, and (4) courts, not arbitrators, should generally determine arbitrability.

First, Ms. Johns contends that her "claims for conversion, misappropriation, and

interference with business dealings do not relate to the interpretation and performance of the

contract and therefore do not fall under the narrow class of cases subject to arbitration which

'arise under' the Agreement."  Opp'n at 11.  Even assuming that arbitration is required only for

those disputes which 'arise under' the Agreement (as opposed to the broader language waiving

trial by jury for "any matters whatsoever arising out of or in any way connected with this

Agreement"), Ms. Johns' argument fails.  This follows because her conversion,

misappropriation, and interference with business dealings all stem from Defendant's alleged

failure to return the updated email list, which  Ms. Johns alleges was required "pursuant to the

contract," Compl. ¶¶ 1, 19, 20, 65.  Accordingly, those claims "arise under" the Agreement.  *Cf.*

*Gregory v. Electro-Mech. Corp.*, 83 F.3d 382 (11th Cir. 1996) (provision requiring arbitration of

disputes "arising under" an agreement includes disputes that originate out of or have a

connection to the underlying agreement).

Second, Ms. Johns claims that arbitration is inappropriate because the arbitration

clause at issue does not survive the termination of the contract.  The Supreme Court, however,

has ruled that an arbitration clause survives termination of a contract when the dispute is over an

obligation created by the terminated contract.  *Nolde Bros., Inc. v. Local No. 358, Bakery &*

*Confectionery Workers Union,* 430 U.S. 243, 252 (1977).  Enforcement of arbitration post

contract termination requires that the dispute involve facts that arose before expiration or an

action taken after expiration that "infringes a right that accrued or vested under the agreement.*"

Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991).

All of Ms. Johns' claims (breach of contract, conversion, misappropriation, and interference with

prospective business advantage) either arose before the Agreement was terminated (*i.e.*,

Newsmax's alleged failure to market and sell advertising in Ms. Johns' email list and to maintain

and update the email list) or arose as a result of Newsmax's alleged failure to return the updated

email list.  Those allegations that arose during the Agreement (and from an alleged breach of the

Agreement) are subject to arbitration.  And those claims that arose post-termination (involving

Newsmax's alleged failure to return the updated email list) "infringe[] a right that accrued or

vested under the agreement"—namely Newsmax's obligation to maintain, update, and return the

email list.  Accordingly, post-termination enforcement of the arbitration clause is appropriate.

Despite Ms. Johns' argument to the contrary, the additional language in the

arbitration provision waiving a trial by jury and establishing a one year deadline to bring an

action does not alter this result.  The language of the arbitration provision is clear: "[a]ny

disputes that cannot be mutually resolved will then be settled by arbitration in the State of

Florida."  Compl., Ex. 1 ¶ 23.  Emphasizing that "each party waives trial by jury in any

action . . . [and] that no action, suit or proceeding shall be brought . . . more than one year after

the date of service performed . . . ," *id.* (emphasis omitted), does not abrogate the clear language

of or intent behind the arbitration provision.

Third, Ms. Johns contends that because Newsmax did not request arbitration

between the termination of the contract and Ms. Johns' initiation of this lawsuit, there was an

implicit waiver of the arbitration clause.  Waiver of arbitration requires the voluntary and

intentional relinquishment of the right.  *Raymond James Fin. Services, Inc. v. Saldukas*, 896 So.

2d 707, 711 (Fla. 2005).  This is decided by looking at the totality of the circumstances to see if

the party acted inconsistently with the arbitration clause.  *Nat'l Found. for Cancer Research v.

A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987).  Newsmax cannot be said to

have acted inconsistently with the arbitration provision by failing to request or institute

arbitration proceedings because it is Ms. Johns that is seeking redress from Newsmax, not the

other way around.  Had Newsmax filed the instant action, there could be merit to the argument

that Newsmax's actions were inconsistent with it rights to arbitration.  Merely being an

defendant in a federal lawsuit, however, is insufficient to waive Newsmax's contractual rights to

arbitration.

    Fourth, Ms. Johns makes the puzzling argument that "[a]rbitrability is generally a

question for the trial court, and not the arbitrator, unless the parties 'clearly and unmistakably'

provide otherwise."  Opp'n at 13 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

938, 944 (1995)).  In the present case, there is no dispute that this Court will decide whether

arbitration is required.[3]  The argument that courts should generally make the decision with

respect to arbitrability, does nothing to advance Ms. Johns' contention that arbitration is

inappropriate in this case.  In other words, deciding who determines whether arbitration should

proceed (a point uncontested in this proceeding) does nothing to answer the question of whether

arbitration should proceed (the issue in the present dispute).  Accordingly, Ms. Johns' reliance on

*First Options* and her argument with respect to arbitrability are unavailing.

---

[3]  Given Ms. Johns' legitimate (although ultimately unsuccessful) argument that her dispute is
not subject to the arbitration provision, it is understandable that Ms. Johns filed this suit (to
determine arbitrability) before pursuing arbitration.

**IV.  CONCLUSION**

For the reasons stated above, this Court has specific personal jurisdiction over

Newsmax and venue in the District of Columbia is appropriate.  Accordingly, the Court will

deny Newsmax's motion to dismiss.  Additionally, the arbitration provision in the Agreement is

enforceable and this Court will stay these proceedings and order that the parties arbitrate their

dispute in compliance with that provision.  A memorializing Order accompanies this Opinion.


Date:  August 24, 2012                    _____/s/_____
                                          ROSEMARY M. COLLYER
                                          United States District Judge